**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Jan 28 2014, 11:38 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANTHONY S. CHURCHWARD**
Deputy Public Defender
Leonard, Hammond, Thoma, & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RAUL FUENTES,                    )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.           )    No. 02A03-1306-CR-223
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D05-1205-FA-25

**January 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Defendant Raul Fuentes appeals his convictions on three counts of Class A felony child molesting and four counts of Class C felony child molesting. At trial, a nurse testified on behalf of Appellee-Plaintiff the State of Indiana concerning statements one of Fuentes's victims made to her during her physical examination of the victim. Fuentes argues that the trial court abused its discretion in admitting this hearsay under Indiana Evidence Rule 803(4) as statements made for the purpose of medical diagnosis or treatment. Specifically, Fuentes claims the State failed to establish that the victim was motivated to provide the nurse with truthful information. Finding evidence that the victim knew she was being examined because of the molestation and that she understood the nurse's role in examining her, we conclude that the hearsay was properly admitted and affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment are as follows. Prior to August 5, 2011, Fuentes's nine-year-old granddaughter I.F occasionally visited Fuentes's home in Fort Wayne. During multiple visits, beginning around June 25, 2011, Fuentes took I.F. to his bedroom and touched the inside and outside of her vagina with his hand, mouth, and penis. Fuentes also touched I.F.'s buttocks and breasts with his hand and forced I.F. to touch his penis.

D.G. is the fifteen-year-old daughter of Fuentes's son's ex-girlfriend. In 2010 and 2011, when D.G. was twelve and thirteen years old, respectively, Fuentes's daughter Corinne Fuentes-Sanchez occasionally babysat D.G. at Fuentes's home. On multiple

occasions during this babysitting, Fuentes took D.G. to his bedroom where he touched D.G.'s breasts and forced her to touch his penis. On one occasion. Fuentes also hugged D.G. and attempted to touch her buttocks.

Around August 5, 2011, I.F. told her mother about the molestation, and I.F.'s mother contacted the Fort Wayne Police Department. Upon inquiry, D.G. then told Fuentes-Sanchez about the molestation, and Fuentes-Sanchez notified D.G.'s mother. D.G.'s mother contacted the police, and both children were interviewed independently by forensic interviewers at the Bill Lewis Children's Center in Fort Wayne. Following I.F.'s interview on August 16, 2011, during which I.F.'s interviewers learned that she had been vaginally penetrated, I.F. was taken to the Fort Wayne Sexual Assault Treatment Center. There, I.F. was examined by Sharon Robinson, a registered nurse.

On May 31, 2012, the State charged Fuentes as follows: Counts I, II, and III, Class A felony child molesting; and Counts IV, V, VI, and VII, Class C felony child molesting. During a two-day jury trial, I.F. and D.G. both testified regarding Fuentes's acts of molestation. Robinson also testified concerning statements I.F. made to her during her examination of I.F. ("I.F.'s Hearsay"). Over Fuentes's objection, the trial court admitted I.F.'s Hearsay into evidence under Indiana Evidence Rule 803(4) as statements made for the purpose of medical diagnosis or treatment. The jury found Fuentes guilty as charged.

The trial court sentenced Fuentes to forty years each for his convictions on Counts I through III, and to five years each for those on Counts IV through VII. The court ordered Fuentes's sentences for Counts I through V to be served concurrently but consecutive to his sentences for Counts VI and VII, which the court ordered to be served concurrently. In

3

total, Fuentes was sentenced to forty-five years of incarceration. Where necessary, additional facts will be provided below.

## DISCUSSION AND DECISION

Fuentes argues that the trial court abused its discretion in admitting I.F.'s Hearsay into evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible except as provided by law or by [the Indiana Rules of Evidence]." Evid. R. 802. Indiana Evidence Rule 803(4) excepts from the hearsay rule, "Statements made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." "This exception is based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person he wants to treat him." *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996).

> The underlying rationale for this hearsay exception requires a two-step analysis for evaluating whether a statement is properly admitted pursuant to Evid. R. 803(4): 1) is the declarant motivated to provide truthful information in order to promote diagnosis and treatment; and 2) is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment. *See United States v. Barrett*, 8 F.3d 1296, 1300 (8th Cir. 1993); *Gong v. Hirsch*, 913 F.2d 1269 (7th Cir. 1990).

*McClain*, 675 N.E.2d at 331.

Fuentes claims only that the State failed to establish that I.F. was motivated to provide Robinson with truthful information during her examination.

4

In order to satisfy the requirement of the declarant's motivation, the declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment. *See* 13 R. Miller, Indiana Practice § 803.104 at 625 (2d ed. 1995). Often, for example where a patient consults with a physician, the declarant's desire to seek and receive treatment may be inferred from the circumstances. Where that inference is not obvious, as in this case involving a young child brought to treatment by someone else, there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information. *Barrett*, 8 F.3d at 1300.

*McClain*, 675 N.E.2d at 331. Fuentes contends there is no evidence that I.F. understood Robinson's role in examining her. We disagree.

In *Cooper v. State*, 714 N.E.2d 689 (Ind. Ct. App. 1999), *trans. denied*, we held admissible under Evidence Rule 803(4) a nurse's hearsay testimony concerning statements a five- or six-year-old victim of child molestation made to her during her examination of the victim. *Id.* at 694. In so holding, we determined that the victim was motivated to provide the nurse with truthful information because the victim "knew that she was in the emergency room for an examination by a physician because of the molestation" and because she "sufficiently understood the professional role of both the nurse and the doctor who examined her...." *Id.*; *cf. McClain*, 675 N.E.2d at 331 (holding therapist's hearsay testimony inadmissible because "the record is devoid of any evidence showing that the victim understood that he was speaking to a trained professional for the purposes of obtaining diagnosis of, or providing treatment for, emotional or psychological injuries").

In support of our determination in *Cooper*, we emphasized portions of the nurse's testimony regarding the procedure she follows when examining a child victim. The nurse testified generally as follows. "[W]e introduce ourselves to the child ... and have the child

5

get to know us." *Id.* at 692 (emphasis omitted). "I usually tell them my name is Kim and I'll be their nurse and I'll be with them the whole time." *Id.* (emphasis omitted). "I tell them who the doctor is and I give them a rough view of the things we're going to do." *Id.* (emphasis omitted). "Let them know what they are going to expect, what the doctor is going to do, and that it's okay for the doctor and nurse to take a look at them." *Id.* (emphasis omitted). "After you do the initial trying to get to know the child ... generally I'll just take my time ... and then I'll start addressing the child, ask them if they know why they're in the emergency room." *Id.* (emphasis omitted).

The nurse in *Cooper* further testified that she followed this general procedure with respect to the specific victim in that case. She said to the victim, "What my name is, what her name is, just let her know a little bit about what she's doing. Her mom brought her in because of something, and if she's going to tell me what that something is when she feels comfortable to talk to me about it." *Id.* at 693 (emphasis omitted). "I asked her if she knew why she was there in the emergency room, and I believe she thought she was going to get an exam. She needed to get examined, but she didn't know why." *Id.* at 694 (emphasis omitted). It was only after this introduction was made that the victim made statements to the nurse concerning the nature of the molestation by the defendant. *Id.*

Here, Robinson provided the following testimony regarding the procedure she followed when examining I.F.

> Q   Do you have a particular kind of process that you go through when you're going to be conducting an examination of a child?
> A   Yes.
> Q   Okay. How do you start your - - first of all, introductions? Do you introduce yourself to the child?

6

A  I do.
Q  How do you introduce yourself to the child?
A  I just shake their hand and tell them that I'm a nurse and I'm a special kind of nurse and that when we get to the room - - well first of all I tell them I'm going to look at you from the top of your head all the way to your toes, front and back and I'm, going to look in the middle, everywhere in the middle. I don't do anything that hurts and that the special part about my job is that I don't have to give any shots.
Q  Okay. Did that relieve some kids?
A  Oh a lot of them yes.
Q  So you introduce yourself to the child. And then what's the process that you follow then, process that you follow?
A  Well I explain to the parents exactly what I'm going to do, parent or care giver. … Then I take the child back to the room, show them everything in the room, ask them if they have any questions and then I'll get their vital signs, I listen to their heart and then basically most times, especially the older children I'll just ask them if they know why they came to see me.

Tr. p. 431-33.

Q  Did you ask [I.F.] why she was there?
A  Yes.

Tr. p. 434.

Q  When you asked [I.F.] why she was there what did she tell you?
A  She stated to me, my grandpa touches my cooch and my boobies, a couple of fingers he touches on the inside and outside of my cooch. His hot dog he puts on the outside and the inside of my cooch. He puts his mouth - - excuse me - - he kisses and does licking and sucking to both of my boobies. He puts his mouth and licks on the outside and the inside of my cooch. He makes me, he made me touch his hotdog.

Tr. p. 442-43.

We conclude that Robinson's above quoted testimony established the proper foundation for the admission of I.F.'s Hearsay under Evidence Rule 803(4). Like the victim in *Cooper*, I.F. knew she was going to be examined because of the molestation by Fuentes and understood Robinson's role in conducting the examination. This triggered

7

I.F.'s motivation to provide Robinson with truthful information. The trial court did not abuse its discretion; I.F.'s Hearsay was admissible.

Moreover, any error in the admission of I.F.'s Hearsay would have been harmless because that evidence merely repeated I.F.'s own testimony at trial. "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *McClain*, 675 N.E.2d at 331-32; *see* Ind. Trial Rule 61. Here, I.F. testified that Fuentes touched her vagina with his hand, mouth, and penis; touched her buttocks and breasts with his hand; and forced her to touch his penis. (Tr. 271). This testimony, which was subject to cross-examination by Fuentes, was substantially the same as I.F.'s Hearsay.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.